UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Mercelis Odom, | ) | C/A No.  5:13-cv-01231-DCN-KDW |
| | ) | |
|                   Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| United States of America, Michael Pittman, VT Officer, | ) ) | |
| | ) | |
| | ) | |
|                   Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff, a pro se prisoner, brings this action alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Torts Claims Act ("FTCA").[1] This matter is before the court on Defendants' Motion for Summary Judgment, filed on August 26, 2013. ECF No. 28.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) the court advised Plaintiff, on August 27, 2013, of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 29. On September 17, 2013, Plaintiff filed a response in opposition to Defendants' Motion. ECF No. 31.[2]

      I.      Factual Background

Plaintiff is presently confined in a Federal Corrections Institution in Fort Dix, New Jersey. At the time of the incidents alleged in the Complaint, Plaintiff was incarcerated at the

---

[1] 28 U.S.C. § 1346 and 28 U.S.C. § 2671, *et seq*.

[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C, which provides for all pretrial proceedings in certain types of matters be referred to a United States Magistrate Judge. Because Defendants' Motion is dispositive, the undersigned enters this Report for the district judge's consideration.

Federal Corrections Institution in Edgefield, South Carolina ("FCI-Edgefield"). In his Complaint, Plaintiff alleges that, on or about November 30, 2011, he was assaulted with a mop handle by another inmate "while exiting the dishroom of the dining hall." ECF No. 1 at 3. Plaintiff contends that he was visually disoriented from the assault when Defendant Michael Pittman ran in from the dining hall and ordered Plaintiff to get on the ground. *Id.* Plaintiff argues that he was "bewildered by the blow he received, [and] could not respond in a timely manner to [Pittman's] request." *Id.* Plaintiff contends that Pittman then approached Plaintiff and grabbed Plaintiff's left arm and "forced his forearm into Plaintiff's back." *Id.* Plaintiff contends that he "suffered a massive injury to his arm" which resulted in "limited use of his left arm" and loss of "some of the feeling in his left arm." *Id.* Plaintiff seeks compensatory damages. *Id*. at 4.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact when none exists. *See* Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the

initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.  Analysis

A. *Bivens* Claim

1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007). Exhaustion is required for "[a]ll action[s] . . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." 534 U.S. at 532. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth v. Churner*, 532 U.S. 731, 741 (2000). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. at 93-95. "When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Woodford*, 548 U.S. at 95. This is the reason for the BOP requirement that inmates institute their grievances within 20 days of the date of incident giving rise to the complaint. *See* 28 C.F.R. § 542.14(a). As the Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the

4

> administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford*, 548 U.S. at 95.

Defendants argue they are entitled to summary judgment because Plaintiff has failed to exhaust "his remedies available under the formal Administrative Remedy procedure established by the BOP concerning his allegation of assault and excessive use-of-force." ECF No. 28 at 6. In support of this contention Defendants offer an affidavit from Roy Lathrop, a Paralegal Specialist for the United States Department of Justice, Federal BOP. Lathrop Aff. ¶ 1, ECF No. 28-1. Lathrop attests that Plaintiff filed a Request for Administrative Remedy on January 5, 2011 that the warden responded to on January 11, 2012. Lathrop Aff. ¶ 4. Lathrop states that Plaintiff appealed the warden's response "to the Regional Office on a Regional Office Administrative Remedy Appeal" on March 12, 2012. *Id.* at ¶ 5. Lathrop avers that Plaintiff "received a response from the Regional Director" on May 8, 2012. *Id.* Lathrop attests that there is no evidence that Plaintiff made any attempt "to file an appeal at the final level of the process to the General Counsel." *Id.* at ¶ 6. Accordingly, Defendants contend that Plaintiff has not exhausted his administrative remedies concerning his allegation of assault and excessive use-of-force. *Id.*

Plaintiff argues in response that he attempted to file an appeal to the General Counsel and tried to obtain a BP-11 from his "unit team member (Case Manager and Counselor) on numerous occasions, but was told by the counselor the he did not have any BP-11 forms." Odom Aff., ECF No. 31-1. Plaintiff contends that he then asked his Unit Manager for a BP-11 form and was told that the Unit Manager did not have any BP-11 forms and that Plaintiff should get them from his counselor. *Id.* Plaintiff alleges that he tried over several more days

5

to obtain a BP-11 form until the time to file his BP-11 had expired. *Id.*  Plaintiff argues that he was deliberately not given a BP-11 form "to frustrate and deter [him] from accessing the inmate grievance process, therefore making the BP-11 part of the inmate Administrative remedy process unavailable." *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that it is a question of fact whether Plaintiff's ability to use the grievance system was inhibited by a failure to provide Plaintiff with a BP-11 form so that Plaintiff could file an appeal with the General Counsel.  "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Stenhouse*, 2006 WL 752876 at \*2 ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies.").  The undersigned finds that Defendants have not met their burden of showing "there is no genuine dispute as to any material fact" regarding Plaintiff's failure to exhaust his administrative remedies and therefore the undersigned recommends that Defendants' motion for summary judgment for failure to exhaust be denied.

### 2.  Merits of *Bivens* Claims

Plaintiff is bringing suit against an employee of a federal prison; as such, his constitutional claims are evaluated under *Bivens*.  *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim under 42

U.S.C. § 1983.  However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. *See* 42 U.S.C. § 1983; *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982), *Moore v. U.S. Postal Service*, 159 Fed. Appx. 265, at *2 (2d Cir. 2005) (phrase "under color of state law" applies "only to state actors, not federal officials"). Nevertheless, *Harlow v. Fitzgerald,* 457 U.S. 800, 814-20 (1982) and progeny indicate that case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Bolin v. Story*, 225 F.3d 1234, 1241-42 (11th Cir. 2000); *Campbell v. Civil Air Patrol*, 131 F. Supp. 2d 1303, 1310, n.8 (M.D. Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

Plaintiff's *Bivens* claim is asserted against the individual officer Defendant Pittman[3] and Plaintiff contends that Pittman assaulted him when he grabbed Plaintiff's left arm "while forcing his forearm into the Plaintiff's back."  ECF No. 1 at 3.  Plaintiff argues that Defendant Pittman's action caused Plaintiff "limited use of his left arm and loss of some of the feeling of his left arm." *Id.*

It is well settled that the "unnecessary and wanton infliction of pain" imposed "maliciously and sadistically" by prison officials "for the very purpose of causing harm" states a claim under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). However, it is also recognized that a prison's internal security is "peculiarly a matter normally left to the discretion of prison administrators" and they should be given "wide-ranging deference" regarding the actions necessary "to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22.

---

[3] Defendant United States of America is not subject to suit under Plaintiff's *Bivens* claim. *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Moore v. USDA on behalf of FHA*, 55 F.3d 991, 995 (5th Cir. 1995).  Rather, the United States is subject to suit under Plaintiff's FTCA claim, while the individual Defendant is not subject to suit under that claim.

To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). Thus, courts must analyze both subjective and objective components. For the subjective component, the Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321. When evaluating the objective component, the absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy,* 559 U.S. 34, 38-39 (2010). The extent of the injury incurred is one factor indicative of whether the force used was necessary in a particular situation; however, if the force used was applied maliciously and sadistically, liability is not avoided simply because the prisoner "ha[d] the good fortune to escape without serious injury." *Id.* at 38. As the Court noted in *Wilkins*, the issue is the nature of the force, not the extent of the injury.

Defendants argue that there is no evidence that Defendant Pittman "acted maliciously or sadistically for the very purpose of causing harm to [Plaintiff] in his effort to restore order by restraining him." ECF No. 28 at 16. Defendants contend that Defendant Pittman "used only the amount of force necessary to get the situation under control" and Pittman's actions "were appropriate and standard correctional procedure, regardless of whether [Plaintiff] was

8

standing or kneeling." *Id.* Defendants further aver that Plaintiff has not offered any proof that his left arm injury was caused by Pittman's action. ECF No. 28 at 17. Pittman attests that he entered the inmate dining room on November 30, 2011 and observed Plaintiff "running through the dining room with another inmate chasing him." Pittman Aff. ¶ 2 , ECF No. 28-2. Pittman states that he ordered Plaintiff "to get down on the floor" and Plaintiff did not comply with the order and "began moving in an aggressive manner and flailing his arms." *Id.* Pittman avers that he then "firmly grabbed [Plaintiff's] arms and placed them behind his back so that another staff member could place handcuffs on him." *Id.* ¶ 4. Pittman attests that he did not intend to harm Plaintiff and "did not tug or twist Plaintiff's arms in any unusual fashion." *Id.* ¶ 5. Defendants offer an affidavit from Manly Parker, a corrections officer at FCI-Edgefield, who attests that he heard Pittman order Plaintiff to get down on the floor, and heard Plaintiff "yell 'do what'" after which Pittman grabbed Plaintiff by the arms and placed him on the floor. Parker Aff. ¶ 2, ECF No. 28-3. Defendants also offer an affidavit from Kahle Vining, who was employed as a Supervisory Special Investigative Supervisor at FCI-Edgefield during the time period referenced in Plaintiff's Complaint. Vining Aff. ¶ 1, ECF No. 28-5. Vining attests that she reviewed the video footage of the incident, which is no longer available for review,[4] and avers that the video footage show Plaintiff "running through the dining room with the other inmate chasing him with a mop handle . . . [and] after responding staff arrived on the scene, [Plaintiff] continued to move around and did not get down on his knees as he alleges." *Id.* ¶ 4. Vining states that Pittman grabbed Plaintiff and "placed his arms and hands behind his back and placed him on

---

[4] Vining attests that the video footage of the incident was lost after the computer equipment that captured the video footage malfunctioned. Vining Aff. ¶ 3.

the ground." *Id.* Defendants also offer Plaintiff's medical records related to the incident in Plaintiff's Complaint. *See* ECF No. 28-4.

Plaintiff argues that Defendant Pittman's affidavit shows that he perceived Plaintiff as a threat and therefore Pittman's "state of mind [was] to cause harm [to Plaintiff]" and to defend himself before he was harmed. ECF No. 31 at 4. Plaintiff argues that Defendant's version of the events is "completely contradicted by . . . eye-witness staff members [Manly Parker and Kahle Vining] and inmates who also witnessed the incident." *Id.* at 5. Plaintiff argues that Parker "never stated that he witnessed plaintiff as being a threat to the defendant," and that Vining never stated that he "viewed video footage that showed plaintiff being aggressive to the defendant nor did he state that he viewed plaintiff failing [sic] his arms at the defendant." *Id.* Plaintiff submits a copy of a neurology report diagnosing Plaintiff with carpal tunnel syndrome and argues that this report creates an issue of fact whether the force applied to Plaintiff was excessive. ECF No. 31 at 6. Plaintiff argues that "there was no need for the application of force used that could cause the diagnosis to plaintiff." *Id.* Plaintiff further contends that the loss of the video footage of the incident could allow a jury to conclude that the footage was lost because it did not support Defendant Pittman's version of the facts. *Id.* at 6.

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has failed to offer sufficient evidence to create an issue of material fact as to whether Defendant Pittman's actions were carried out "maliciously and sadistically" to cause Plaintiff harm. Plaintiff's argument is that Defendant Pittman acted maliciously because Pittman perceived Plaintiff as a threat and therefore Pittman's "state of mind" was to cause Plaintiff harm. There is, however, no evidence in the record that Pittman acted maliciously

10

to cause Plaintiff harm. In fact, the only evidence in the record is that Pittman grabbed Plaintiff's arms and placed them behind Plaintiff's back. Plaintiff does not contend that Pittman used more force than was required to complete this action. Instead Plaintiff appears to argue that Pittman should not have used any force against Plaintiff at all. However, Plaintiff's argument ignores the fact that he admittedly failed to comply with Pittman's orders. Plaintiff admits he was involved in an altercation with another inmate, and that when Defendant Pittman responded to the incident, Plaintiff failed to abide by Pittman's order to get on the ground. *See* ECF No. 1 at 3. Given the circumstances, the undersigned does not find that the amount of force utilized by Defendant Pittman was unnecessary or excessive. Accordingly, the undersigned recommends that Defendant Pittman be granted summary judgment on this claim.

### 3. Qualified Immunity

Defendants assert that Defendant Pittman is entitled to qualified immunity on Plaintiff's *Bivens* claims. ECF No. 28 at 12. Plaintiff contends that Defendant Pittman used excessive force against Plaintiff and "it is a clearly established rights for a prisoner to be free from an incident involving excessive use of force." ECF No. 31 at 3-4. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id*. (citations and internal quotation omitted).

The record before the court shows that Defendant Pittman performed the discretionary functions of his respective official duties in an objectively reasonable fashion and did not transgress any statutory or constitutional rights of Plaintiff. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendant Pittman be granted qualified immunity.

### B.  FTCA Claims

Plaintiff has expressly filed this action against Defendant United States pursuant to the FTCA for assault and negligence for the actions taken by Defendant Pittman on or about November 30, 2011.  ECF No. 1.

The FTCA provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for loss of property or

personal injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Before obtaining relief in federal court under the FTCA, a plaintiff must first have exhausted his administrative remedies. *See* 28 U.S.C. § 2675; *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Defendants do not dispute that Plaintiff has exhausted his administrative remedies with respect to his FTCA claims. ECF No. 28 at 8.

Under the FTCA, the court must determine liability in accordance with the substantive tort law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, because Plaintiff alleges assault and negligence that occurred while he was housed in a BOP facility located in South Carolina, the substantive law of South Carolina controls. Under South Carolina law,

> an assault is defined as an unlawful attempt or offer, with force or violence, to do some bodily harm to another, or engage in some unlawful offensive bodily contact by means apparently calculated to immediately produce the intended result if carried out. Stated another way, an assault is an unlawful attempt or offer to do bodily injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of imminent peril, coupled with the apparent ability to effectuate the attempt if not prevented.

*Carter v. Rogers*, 805 F.2d 1153, 1157 n. 4 (4th Cir. 1986).To recover in a negligence claim under South Carolina law, "a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Bloom v. Ravoira*, 529

13

S.E.2d 710, 712 (S.C. 2000).  A plaintiff may show an affirmative legal duty of care arising from a statute if the plaintiff is a member of the class of persons the statute is intended to protect, and the essential purpose of the statute is to protect the plaintiff from the kind of harm he suffered. *Rayfield v. S.C. Dep't of Corr.*, 374 S.E.2d 910, 914 (S.C. Ct. App. 1988). In this case the BOP owes Plaintiff an affirmative legal duty in accordance with 18 U.S.C. § 4042, which provides that the BOP "shall . . . provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2).  For purposes of an FTCA claim, the duty is one of "reasonable care." *See Johnson v. U.S. Gov't*, 258 F. Supp. 372, 376 (E.D. Va. 1966) (holding that duty of care "only requires the exercise of ordinary diligence under the circumstances."); *see also Beckwith v. Hart*, 263 F. Supp. 2d 1018, 1022 (D. Md. 2003).

Defendants move for summary judgment on Plaintiff's FTCA claims and cite to *Carter v. Rogers*, 805 F.2d 1153 (4th Cir. 1986) to show that "the use of excessive force [is] an essential element to be proved by Plaintiff" as the basis for his recovery under a state law claim for assault.  ECF No. 28 at 19.  Defendants contend that "because [Plaintiff] has not stated a valid claim of an excessive use of force as a matter of law, likewise, he has no valid state law claim of assault."  *Id.* at 20. In response, Plaintiff contends that his complaint "did allege negligence against [Defendant Pittman]" and therefore asks the court to "construe his FTCA as a claim of negligence and personal injury against the United States."  ECF No. 31 at 7.  The undersigned finds that Plaintiff has not offered sufficient evidence that Defendant Pittman acted with unlawful force toward Plaintiff.  *See* discussion on excessive force *supra.* As such, the undersigned recommends that Defendant United States be granted summary judgment on Plaintiff's FTCA assault claim. Because Defendants did not address Plaintiff's

FTCA negligence claim in their Motion for Summary Judgment, the undersigned declines to recommend summary judgment on that claim.

## IV.    Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 28, be granted on Plaintiff's *Bivens* claim and Plaintiff's FTCA claim for assault. The undersigned declines to recommend summary judgment on Plaintiff's FTCA negligence claim.

IT IS SO RECOMMENDED.

December 31, 2013                                                    Kaymani D. West
Florence, South Carolina                                             United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**